WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Fredy Rojas-Soperanes,<br><br>Defendant. | No. CR-21-02374-001-TUC-JCH (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Before the Court are Defendant's motions to dismiss (Doc. 28) and to compel *Henthorn*[1] material (Doc. 29). The motion to dismiss is fully briefed. (Docs. 31, 34.) The Government has responded to the motion to compel. (Doc. 30.) The time to reply has lapsed without a reply from Defendant. Neither party requests an evidentiary hearing or oral argument. (Docs. 28, 29, 30, 31, 34.) Additionally, this Court finds that a hearing is neither necessary nor warranted and considers this matter on the briefs. This case has been assigned to the undersigned for report and recommendation pursuant to LRCrim 5.1 and 57.6(d)(1). Magistrate Judge Ferraro recommends the District Court, after its independent review, deny Defendant's motions.

**BACKGROUND**

The Court bases this section on the facts in the briefs. On August 22, 2021, Border Patrol Agents (BPA) went near Sasabe, Arizona, to investigate a group of five suspected non-citizens the Common Operating Picture Camera (COP) was tracking. (Doc. 31 at 1.)

---

[1] *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

The group was traveling away from the United States-Mexico border. *Id.* Upon arrival, Agent B.H. encountered two individuals and determine they were in the United States illegally. *Id.* at 2. He arrested the two individuals and then went to search for the rest of the group. *Id.* He encountered Defendant in thick brush. *Id.* Defendant allegedly attempted to evade capture and assaulted Agent B.H. *Id.* One agent reported witnessing some of the assault, but the other agents said they were unable to see the assault because of the thick brush and their location. *Id.*

Agents arrested Defendant. *Id.* at 3. Agents read Defendant his *Miranda* rights, and Defendant invoked his right to remain silent. *Id.* Agents interviewed him the next day about his immigration status. *Id.*

After Defendant's arrest, the two potential witnesses were deported without being questioned by the Government, Border Patrol Agents, or the defense. (Doc. 28 at 3-4.) On September 15, 2021, Defendant was charged with assault on a federal officer. (Doc. 9.) The defense has attempted to locate the potential witnesses without success, even sending an investigator to locate them. (Doc. 28 at 3-4.) Additionally, disclosure from the Government indicates video records may exist in this matter, specifically the COP video tracking the group before and after Defendant's arrest. *Id.* at 4. This matter is currently set for trial on May 24, 2022. (Doc. 23 at 3.)

**DEFENDANT'S MOTIONS**

Defendant moves to dismiss this action because the Government failed to preserve material exculpatory evidence. (Doc. 28 at 1.) He challenges the rapid deportation of potential eyewitnesses, and the failure to disclose video of his statements and video captured by the COP camera. *Id.*

Defendant argues the Government acted contrary to federal policy by deporting the eyewitnesses. *Id.* at 6-7. He asserts this shows the Government acted in bad faith. *Id.* at 7-8. He also contends that without the COP video he is unable to determine the vantage points of the individuals. *Id.* at 8. Defendant makes no bad faith argument regarding the video of his statements. *See id.* at 6-8.

When arguing he was prejudiced, Defendant asserts "it is impossible to know what the Mexican-born material witnesses would have said because the government released them for rapid deportation before defense counsel could interview them." *Id.* at 9. He only argues the prejudice of the deportation of the captured individuals. *Id.* at 8-9.

In the alternative, Defendant requests a missing witness or evidence jury instruction. *Id.* at 9-10. He only mentions the COP footage and the potential witnesses as the missing evidence. *Id.*

Defendant did mention the video of his statements in his reply. (Doc. 34 at 2.) He argues it should be provided under Rule 16 of the Federal Rules of Criminal Procedure. *Id.* He also moved for *Henthorn* Material on the agent witnesses. (Doc. 29.)

**DISCUSSION**

*Standard for Motion to Dismiss*

The Court of Appeals for the Ninth Circuit has adopted a two-part test to consider whether deporting alien-witnesses comprises a constitutional violation. *United States v. Dring*, 930 F.2d 687, 963 (9th Cir. 1991); *see also United States v. Leal-Del Carmen*, 697 F.3d 964, 969 (9th Cir. 2012). First, the defendant has the burden to show the government acted in bad faith. *Id.* (citing *Dring*, 930 F.2d at 693). Bad faith can be shown if the government departed from normal procedures or deported the witness to gain an unfair tactical advantage. *United States v. Gastelum-Almeida*, 298 F.3d 1167, 1174 (9th Cir. 2002). Second, "the defendant must at least make 'a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.'" *Leal-Del Carmen*, 697 F.3d at 969 (quoting *Dring*, 930 F.2d at 693-94). This balances defendants' rights to present information to the jury and the federal government's interest in enforcing immigration laws through deportations. *Id.*

*Bad Faith*

"When the government doesn't know what a witness will say, it doesn't act in bad faith by deporting him." *Leal-Del Carmen*, 697 F.3d at 970. The main question is what the

Government knew at the time of deportation. *Id.*

Defendant mainly argues the Government's actions were contrary to federal policy at the time. (Doc. 28 at 6-7.) As the Government points out, this is inaccurate. (Doc. 31 at 7.) The zero-tolerance policy has been rescinded and the policy had changed when the deportations occurred. There is no indication the Government knew or thought the witnesses would provide exculpatory testimony. Thus, Defendant has not shown the Government acted in bad faith. Moreover, Defendant does not mention any bad faith argument regarding the video of his statements or the COP video. (Doc. 28 at 6-8.)

Defendant has failed to carry his burden. Accordingly, the Court recommends the District Court deny the motion to dismiss. The District Court need not consider whether Defendant suffered prejudice.

*Prejudice*

If the District Court does consider the prejudice issue, Defendant still fails to carry his burden. First, he made no prejudice argument as to the videos. (Doc 28 at 8-9.) Second, he argues it is "impossible" to say what the deported witnesses might say. *Id.* While the materiality requirement may be relaxed in these situations, courts have not wholly dispensed with it. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 870 (1982). There must be "some explanation of how the[] testimony would have been favorable and material." *Id.* at 872. Defendant has not claimed or argued the missing testimony differs from what is currently available, in other words that it is not merely cumulative, or that the individuals even witnessed the altercation or heard any relevant information from Defendant after the altercation. At most Defendant states he "deserved an equal opportunity to ask questions," such as how the individuals were treated and whether Defendant said anything during the arrest. (Doc. 28 at 8.) This is insufficient. Defendant has not made a plausible showing the testimony would have been material or favorable to him.

Thus, Defendant has failed to carry his burden and his motion should be denied. Further, this Court recommends denying Defendant's Rule 16 request, to the extent it was actually made. It was made in Defendant's reply and the Government has not had an

opportunity to respond to it. (Doc. 34 at 2.) Defendant may file a motion developing this argument.

*Missing-Witness Instruction*

Defendant requests a missing witness/evidence instruction. (Doc. 28 at 9-10.) This instruction is appropriate if the witness is peculiarly within the power of the Government and if "an inference of unfavorable testimony [against the non-moving party] from an absent witness is a natural and reasonable one." *United States v. Ramirez*, 714 F.3d 1134 (9th Cir. 2013) (alteration in *Ramirez*) (quoting *Leal-Del Carmen*, 697 F.3d at 974).

First, the missing witnesses were peculiarly within the Government's power. *See Leal-Del Carmen*, 697 F.3d at 975 (finding deported witness was peculiarly within government's power). However, the circumstances of this case do not create a natural and reasonable inference that the testimony would be unfavorable. The Government has an interest in enforcing immigration law and there has been no indication it did otherwise. Nonetheless, Defendant may argue this negative inference to the jury as otherwise permitted.

**Henthorn** *Material*

The Due Process Clause requires the Government to disclose information favorable to the accused that is material to either guilt or punishment. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court of the United States held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Supreme Court has since extended the prosecution's disclosure obligation to evidence useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. *See Giglio v. United States*, 405 U.S. 150, 153-55 (1972) ("When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." (quoting *Napue v. Illinois*, 360 U.S. 264 at 269 (1959))); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn

of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *United States v. Bagley*, 473 U.S. 667, 676 (1985) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule."); *Milke v. Ryan*, 711 F.3d 998, 1012-13 (9th Cir. 2013) ("Due process 'imposes' an inescapable duty on the prosecutor 'to disclose known, favorable evidence rising to a material level of importance.' Favorable evidence includes both exculpatory and impeachment material that is relevant either to guilt or punishment." (citation omitted)). In *Henthorn*, the Ninth Circuit required prosecutors to examine the files of testifying law enforcement and to furnish the files to the defendant or the court if it contained material information. 931 F.2d at 31.

Defendant requests any potential *Henthorn* material. (Doc. 29.) The Government states it is complying with its obligation. (Doc. 30 at 3.) The attorneys have requested the files and is reviewing the material. *Id.* at 4. The Government asserts the process should be completed by May 10, 2022. *Id.* Defendant did not respond.

The Court recommends finding the Government is examining the files for any *Henthorn* material and, thus, complying with its *Brady* obligations. Therefore, the Court recommends denying the motion at this time.

**RECOMMENDATION**

Accordingly, this Court recommends, after its independent review of the record, the District Court deny Defendant's motions (Doc. 28, 29) based on the above**. In light of the approaching trial date, any party may serve and file written objections within seven (7) days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within seven (7) days.** No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived.

Dated this 9th day of May, 2022.

Honorable D. Thomas Ferraro
United States Magistrate Judge