**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Fredy Rojas-Soperanes,<br><br>Defendant. | No. CR-21-02374-001-TUC-JCH (DTF)<br><br>**ORDER** |

Before the Court is Defendant's Motion to Dismiss Indictment (Doc. 35) and Defendant's Motion to Preclude Testimonty (*sic*) of Border Patrol Agent Richard Diaz (Doc. 44). Both motions are fully briefed. (Docs. 31, 49.) On referral, Magistrate Judge D. Thomas Ferraro issued his Report and Recommendation ("R&R") on, *inter alia*, Defendant's Motion to Dismiss Indictment. (Doc. 35.)[1]

Defendant filed an Objection to Report and Recommendation to Defendant's Motion to Dismiss the Indictment. (Doc. 53.) The Government responded. (Doc. 65.) At the May 17, 2022 pretrial conference, the parties discussed the R&R and Defendant's motion to seeking to preclude Agent Diaz's testimony. Because the Court finds that the issues raised in Defendant's motion to preclude the testimony of Agent Diaz are intertwined with the issues raised in Defendant's motion to dismiss, the Court considers

---

[1] Magistrate Judge Ferraro's R&R also made a recommendation on Defendant's Motion to Compel: *Henthorn* Material. (Doc. 35 at 1.) After review of the Government's April 26, 2022, in camera Henthorn memorandum this Court entered an Order under seal granting Defendant's Motion to Compel: *Henthorn* Material. (Doc. 50.) Thus, the portion of the R&R recommending denial of Defendant's motion to compel is rejected.

both the R&R and the motion to preclude in this Order. As explained below, the Court rejects the R&R in part, denies Defendant's motion to dismiss the indictment, and denies Defendant's motion to preclude Agent Diaz's testimony.

## I. BACKGROUND

The Government alleges:

On Sunday, August 22, 2021, Border Patrol Agent ("BPA") B.H. and other agents responded to an area near Sasabe, Arizona to investigate information observed on the Common Operating Picture ("COP") Camera. At approximately 5:15 p.m., the COP camera system observed a group of five suspected non-citizens, and it was reported that the group was walking north, away from the border area towards a landmark known as the "Marijuana Tank" approximately one and one quarter miles north of the border.

Agents Plank and Collins were the first to respond to the last known location of the group. Agent B.H. responded a quarter of a mile north of the last known location. Agent B.H. dismounted his UTV, due to the thick vegetation, and began to search for the group on foot. He encountered two subjects lying face down in the brush. He briefly questioned both subjects as to their immigration status and determined they were in the United States of America illegally. He placed both subjects under arrest and turned them over to BPAs Rivera and Collins. Agent B.H. continued to search for the outstanding three subjects.

Agent B.H. continued to search about 50 yards from where C.P.-A and A.A-D were located. The dense brush and vegetation made it difficult for Agent B.H. to see if there was anyone hiding in the area. At some point, Agent B.H. observed someone, later identified as defendant Fredy Rojas-Soperanes, jump out of the brush and run away. When Agent B.H. caught up to him, the defendant hit Agent B.H. in the face with a closed fist. Agent B.H. fell to the ground. Agent B.H. got to his feet and continued to run after the defendant. He caught up to the defendant and wrapped both arms around the defendant's waist. At this point, Agent B.H. fell to his knees, and the defendant shoved Agent B.H.'s arms away from him. Agent B.H. grabbed the defendant's leg, and the defendant kicked Agent B.H. in the face three times in a downward motion. Agent B.H. felt dazed, shaky, and off balance from the heel strikes. He fell to his knees again. He was disoriented and his vision was blurred, but he grabbed the defendant's leg. Agent Gluski arrived and witnessed some of the assault. The other agents were unable to see the assault because of the thick brush and their location.

(Doc. 64 at 1-2.) On September 15, 2021, Defendant was charged by Indictment with one count of assault on a federal officer resulting in bodily injury stemming pursuant to 18 U.S.C. § 111(a) and (b). (Doc. 9.) A jury trial is set for June 14, 2022 at 1:30 p.m. (Doc. 68.)

## II. THE R&R AND MOTIONS

### a. Motion to Dismiss Indictment (Doc. 35)

Defendant seeks dismissal of the Indictment for three reasons: (1) the Government's deportation of the alien witnesses before Defendant had an opportunity to interview them; (2) the Government's failure to disclose Defendant's videotaped statement; and (3) missing video footage from the COP camera. (Doc. 53 at 3-9.)

#### i. Witness Deportation

Defendant argues that the Government acted in bad faith in deporting the alien witnesses because it departed from its normal deportation procedures in three ways. *Id*. at 3. First, Defendant alleges that the Government failed to complete and disclose to defense counsel I-213 forms for the alien witnesses. *Id*. Defendant contends that the I-213 form is used to document and process aliens entering the United States. *Id*. This form documents the alien's biographical information, address, immigration status, records deportation and records an alien's removal under Title 42. *Id*. at 3-4; Doc. 53-1 at 1-4 (example I-213 form). Defendant asserts the Government's failure to complete and disclose I-213 forms for the alien witnesses evidences its bad faith in removing the alien witnesses. *Id*. at 4.

Second, Defendant alleges the Government failed to alert Border Patrol's Critical Incident Team ("CIT") of the incident so that the CIT team could investigate and interview the alien witnesses. *Id*. at 3. Defendant alleges that instead of the CIT team investigating the incident, the agents involved in the events were the investigators. *Id*. Defendant submits a memorandum from supervisory Border Patrol Agent Robert Edwards ("Edwards") wherein Agent Edwards explains that Agents B.H. and Planck were "informed that CIT would not be responding and to take photos of the scene…[.]" (Doc. 53-1 at 1.) Agent Edwards advised Agents B.H. and Planck to "keep any witnesses separate from the subject to who assaulted the agent and transport all to the Tucson Coordination Center (TCC) for

prosecution." *Id*. Defendant argues that Agent Edwards failed to instruct Agents B.H. and Planck to interview the alien witnesses. (Doc. 53 at 5.) He asserts that the failure to involve CIT was a departure from "normal deportation procedures" and constitutes evidence of bad faith. *Id*. Third, Defendant alleges the Government failed to report the incident to the Office of Personal Responsibility ("OPR") and presumably this department would have interviewed the alien witnesses "who might have provided useful information related to the use of excessive force by the Government." *Id*.

Defendant insists that the testimony of the alien witnesses would have been material, favorable to the defense and not cumulative. *Id*. Defendant explains that he will testify that he did not punch Agent B.H. and that he "does not remember kicking him in the face." *Id*. Defendant posits that the deported alien witnesses could have testified about any excited utterances or present sense impressions that Defendant made after the alleged assault when he was transported to rejoin them. *Id*.

The Government responded to each of Defendant's claims of departure from normal procedures which the Court addresses *infra*. (Doc. 65 at 2-7.)

### ii. Disclosure of Defendant's Statement

On August 23, 2021, Defendant was interviewed by Agents Robert Jiminez and Julian Trujillo. (Doc. 53 at 6.) In this interview Defendant was advised of his *Miranda* rights and he invoked his right to remain silent. *Id*. Defendant argues that this statement is material and favorable to his defense because it is the best evidence "to confirm or dispel the credibility of the agents" on the issue of the amount of force the agents used in apprehending him. *Id*. at 7. Defendant asserts that his videotaped statement will show that he suffered a swollen face and a dislocated jaw, and that he was scared and in pain just hours after his arrest. *Id*. at 7-8. His injuries, Defendant insists, are inconsistent with the Government's theory of the case, could impeach a Government witness or provide grounds to attack the reliability, thoroughness, and good faith of the investigation. *Id*. at 8.

At the May 17, 2022 pretrial conference the Court instructed the Government to locate Defendant's videotaped statement. In its opposition the Government advises that it has disclosed Defendjant's videotaped statement. (Doc. 65 at 9.)

### iii. Missing COP Video and the Radio Transmissions

The Government admits that there is no COP video footage of the events because the COP video footage was destroyed. (Doc. 65 at 8.) It claims the COP did not capture the arrest so it was of no evidentiary value. *Id*. Agent Diaz was the COP operator. *Id*. [2]

Defendant argues that the COP footage should not have been destroyed because it would have shown the assault in progress and would have proven that Defendant did not punch Agent B.H. or intentionally kick him in the face. (Doc. 53 at 9.) He claims that the radio transmissions are incomplete pointing out that the recordings abruptly stop while Agent Diaz is actively directing other agents to the group of aliens. *Id*.; Doc. 53-4 (audio of radio transmissions).

The Government argues that Agent Diaz's radio transmissions of the events and his testimony establish that Defendant is not prejudiced by the destruction of the COP video footage. (Doc. 65 at 8.) The Government states that it disclosed an additional 14 minutes of radio traffic beyond where the originally disclosed footage abruptly stops. It explains that it has ordered a transcript of the additional 14 minutes of transmissions that were recently disclosed and that this transcript will be disclosed once received. *Id*. at 8-9, n.6.

### iv. Standards of Review

#### 1. R&R Standard of Review

The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The district court "must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The Court reviews for clear error the unobjected-to portions of the R&R. *See Johnson v. Zema Systems Corp*., 170 F.3d 734, 736 (7th Cir. 1999); *Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

In his objection to the R&R, Defendant includes three reasons in support of his assertion that the Government departed from its normal deportation proceedings in

---

[2] Defendant's motion to preclude Agent Diaz from testifying will be addressed *infra*. (Doc. 44.)

deporting the alien witnesses that were not raised in his motion to dismiss and therefore were not considered by the Magistrate Judge. (Doc. 53 at 3-5.) To address the new arguments made by Defendant, the Government also includes materials that were not presented to the Magistrate Judge. (Doc. 65-1 (transcript of originally disclosed radio transmissions), 65-2 (form I-44 Title 42 expulsion document); 65-3 (interim critical response guidance); 65-4 (CBP use of force administrative guidelines procedures handbook excerpt).)

The Court's review of the R&R is de novo and it will consider the parties' additional materials and argument. *See* Fed. R. Crim. P. 59(b)(3) (Providing that on de novo review of an R&R, "[t]he district judge may accept, reject, or modify the recommendation, receive further evidence, or may resubmit the matter to the magistrate judge with instructions.").

### 2. Missing Witness Standard

The district court applies a two-part test to evaluate whether the government's deportation of an alien-witness amounts to a constitutional violation. *United States v. Leal-Del Carmen*, 697 F.3d 964, 969 (9th Cir. 2012). "First, the defendant must show that the government acted in bad faith." *Leal-Del Carmen*, 697 F.3d at 967-70 (citing *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991)). The government does not violate the defendant's constitutional right where "the executive has made a 'good-faith determination' that the alien-witness possesses no evidence that might exculpate the defendant." *Leal-Del Carmen*, 697 F.3d at 970 (quoting *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–73, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982)). "Second, the defendant must demonstrate that deportation of the witness prejudiced his case." *Leal-Del Carmen*, 697 F.3d at 970 (citing *Dring*, 930 F.2d at 693). To establish prejudice, "the defendant must at least make 'a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.'" *Leal-Del Carmen*, 967 F.3d at 970 (quoting *Dring*, 930 F.2d at 693–94 (additional citations omitted)).

### 3. Missing Witness Instruction Standard

"There are two requirements for a missing-witness instruction." *Leal-Del Carmen*, 697 F.3d at 974. "First, the party seeking the instruction must show that the witness is peculiarly within the power of the other party." *Id*. (citing *United States v. Brutzman,* 731 F.2d 1449, 1453–54 (9th Cir. 1984), *overruled on other grounds by United States v. Charmley,* 764 F.2d 675, 677 n. 1 (9th Cir. 1985)). "Second, under the circumstances, 'an inference of unfavorable testimony from an absent witness is a natural and reasonable one.'" *Leal-Del Carmen*, 697 F.3d at 975 (quoting *United States v. Bramble,* 680 F.2d 590, 592 (9th Cir. 1982) (internal quotation marks omitted)).

### v. Analysis

### 1. Bad Faith Witness Deportation

"When the government doesn't know what a witness will say, it doesn't act in bad faith by deporting him." *Leal-Del Carmen*, 967 F.3d at 970 (citing *Dring*, 930 F.2d at 694). "The question of bad faith thus turns on what the government knew at the time it deported the witness" *Leal-Del Carmen*, 697 F.3d at 970. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id*. (quoting *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)).

As mentioned above, Defendant claims the Government's deportation of the alien witnesses departed from its normal procedures in three ways: (1) I-213 forms were not created; (2) failure of the CIT team to respond; and (3) failure to report the incident to OPR. (Doc. 53 at 3-6.) Regarding the failure to prepare I-213 forms on the alien witness, the Government points out that because the alien witness were expelled pursuant to Title 42— rather than deported—the alien witnesses were not assigned alien numbers (A numbers) and alien files (A files) were not created. (Doc. 65 at 5.) Agents do not interview or fingerprint the aliens expelled pursuant to Tile 42. *Id*. Instead, the Government contends, agents document the expelled aliens' names, dates of birth, and countries of origin and the alien is returned (in this case to Mexico). *Id*. At Exhibit B, the Government provided a

redacted Report of Apprehension or Seizure form (I-44 form) dated August 22, 2021 for one alien witness[3] in this case. (Doc. 65-2 at 2-4.) The Government explains that an I-213 form was created for Defendant because he will be deported—rather than expelled—upon completion of his criminal case. (Doc. 65 at 5.) The Government also points out that the completion of the I-213 form does not mean that the alien witnesses would have been questioned about the assault as an I-213 form focuses on immigration issues. *Id*.

As to the other two alleged instances of normal procedure deviation, the Government argues that there is no requirement that a CIT or OPR unit respond to the alleged events in this case. *Id*. The Government represents that per CBP policy at the time of the assault as reflected in a memorandum on Interim Critical Incident Response Guidance attached as Exhibit C, OPR was required to respond to critical incidents. Critical incidents include incidents involving the use of force that resulted in death or serious injury or the death of a CBP employee. (Doc. 65-3 at 2-4.) According to the material provided by the Government, CIT responds to provide OPR with specialized support in scene processing evidence collection. (Doc. 65 at 5-6.) The Government argues that Defendant did not make an allegation of excessive force until well into pretrial proceedings which was months after the incident occurred. *Id*. at 6. It asserts that given the absence of an excessive force allegation, there was no reason for OPR to respond or for anyone to interview any alleged witnesses. *Id*. Lastly, it points out that CBP policy, set forth in Exhibit D, outlines the steps to be taken when an agent is assaulted or uses force. (Doc. 65-4 at 3-7.) The steps include notifying supervisors, writing memoranda, and submitting an E-STAR Report. *Id*. The Government asserts that all required steps occurred and documentation thereof has been disclosed. (Doc. 65 at 6.)

On this record, the Court finds that Defendant has failed to establish the Government deviated from normal procedures when it deported without interviewing the alien witnesses. Although Defendant claims that the Government deviated from its normal procedures when it allegedly failed to have the CIT team and OPR unit respond to the

---

[3] Anselmo Antunez-Dominguez

alleged incident, the Government has presented a memorandum and excerpts from the CBP Use of Force Administrative Guidelines and Procedures Handbook that show that under the circumstances of this case neither the CIT team nor an OPR unit would have been required to perform any role regarding the alleged events. The Government has also laid out how the alien witnesses' expulsion was processed in this case. In doing so, the Government disclosed an I-44 form for an alien witness in this case. Contrary to Defendants' argument that the Government normally would have prepared I-213 forms for the alien witnesses and thus its failure to do so in this case was a departure from normal procedures, the Government has presented evidence that its normal procedures were not to prepare I-213 forms for the alien witnesses in this case.

Accordingly, in light of the forgoing, the Court finds that Defendant has failed to establish that the Government departed from its normal procedures when it expelled the alien witnesses without interviewing them.

### 2. Prejudice from Witness Deportation

Defendant claims that the testimony of the alien witnesses would have been material and favorable to him. (Doc. 53 at 5.) He states, "It is reasonable to infer that after [Defendant] re-joined the group, that he shared with the group what took place." *Id*. Defendant claims that he "would have been able to call them as witnesses to testify about what he told them…" *Id*. However, Defendant does not go so far as to say that he did rejoin the group and that he shared with the group what he contends occurred. The letter authored by Agent Edwards that Defendant relies on indicates that Agent B.H. and Planck were instructed "to keep any witnesses separate from the subject who assaulted the agent…"[4] thus weakening Defendant's implied assertion that he rejoined the group and that the alien witnesses have information that is material and favorable to his defense. Defendant does not claim that the alien witnesses witnessed the alleged assault and he does not make any another prejudice argument.

In sum, on this record the Court finds that Defendant has failed to establish that the

---

[4] (Doc. 53-3 at 1.)

Government departed from normal procedures when it removed the alien witness and has failed to establish that he was prejudiced by the removal of the alien witnesses.

### 3. Missing Witness Instruction

As set forth above, in order to receive a missing witness instruction Defendant must show that the witness is peculiarly within the power of the Government[5] and that under the circumstances "an inference of unfavorable testimony from an absent witness is a natural and reasonable one." *Leal-Del Carmen*, 697 F.3d at 975. As explained above, the Court finds that Defendant failed to establish that he was prejudiced by the deportation of the alien witnesses. For the same reasons the Court finds that there is an absence of a natural and reasonable inference of unfavorable testimony from the alien witnesses. There is no evidence that any of the alien witnesses have information that is material and favorable to Defendant's defense.

On this record, the Court finds that Defendant has failed to establish that he is entitled to a missing witness instruction.

### 4. Defendant's Statement and the COP Footage

The Government has disclosed Defendant's videotaped statement. (Doc. 65 at 9.) The Government has disclosed an additional 14 minutes of radio traffic regarding the COP's footage of the events and the Government will disclose a transcript of the additional 14 minutes once it is prepared. *Id.* at 8.

The Court finds that the issues regarding the failure to disclose Defendant's video statement and the COP camera footage are moot. The Court finds that the Government's failure to preserve and disclose the COP video footage is not prejudicial to Defendant in light of its disclosure of the initial and supplemental radio transmissions and transcripts.[6]

---

[5] The Court finds the alien witnesses were peculiarly within the power of the Government. Defendant has not argued to the contrary.

[6] The Court finds it necessary to point out that two days after Defendant's arrest he appeared before Magistrate Judge Eric J. Markovich on August 24, 2021 for his initial appearance. (Doc. 3.) On this date, Judge Markovich entered an order concerning the Government's disclosure obligations under the Federal Rules of Criminal Procedure and applicable case law and ordered, in part, "the government to produce to the defendant in a timely manner" all *Brady* material. (Doc. 2.) The destruction of the COP footage in light of Judge Markovich's order could have been problematic for the Government.

### b. Motion to Preclude Testimony of BPA Diaz (Doc. 44)

#### i. Argument

Defendant seeks to preclude the testimony of Agent Diaz on the grounds that he was untimely disclosed as a witness. (Doc. 44 at 1-2.) As discussed above, the COP camera footage no longer exists. Defendant claims that the destruction of the COP footage is in violation of Judge Markovich's order on August 24, 2021. *Id.* at 2. He requests a missing evidence instruction "based partially on the fact that this footage was not maintained and to date [he] has received no reports, written statements or summary of Agent Diaz's testimony as required by law." *Id.* Defendant argues that the admission of Agent Diaz's testimony would be more prejudicial than probative "as it does not relate to the charged conduct since according to the affirmations made in the government's prior pleadings, Agent Diaz allegedly did not see the incidence (*sic*)." *Id.* Lastly, Defendant argues that the admission of the untimely disclosed testimony of Agent Diaz would deny him due process because the late disclosure has prevented Defendant from requesting "timely depositions of this witness." *Id.*

The Government admits it did not disclose Agent Diaz's name until May 5, 2022. (Doc. 49 at 2.) As mentioned above, the Government claims the missing or destroyed COP video recording does not prejudice Defendant because the COP video is not "important" to either party's case. *Id.* at 5. The Government states that Agent Diaz is expected to testify that the COP did not have a view of the interactions between Defendant and Agent B.H. that give rise to the charges in this case. *Id.* Therefore, according to the Government, the COP video would not "support any defense, nor would it be helpful to the government to prove the assault occurred" and it further claims that Agent Diaz's testimony and his radio transmissions are probative and reliable substitutions for the COP video. *Id.* It sets forth that Agent Diaz's testimony is probative of the second element of the charged offense— that Agent B.P. was assaulted while engaged in, or on account of, his official duties. *Id.*

#### ii. Analysis

When Defendant filed his motion to preclude Agent Diaz's testimony trial was set for May 24, 2022 but trial is now set for June 14, 2022. The trial continuance allows

Defendant sufficient opportunity to prepare to address Agent Diaz's anticipated testimony. As mentioned above, Defendant has been provided with Agent Diaz's radio transmissions—including an additional 14 minutes of transmissions. Defendant has also been provided with a transcript of the radio transmissions and will be provided with a transcript of the additional 14 minutes of footage once it is prepared. Under the circumstances, the Court finds that Defendant will not suffer prejudice if Agent Diaz testifies.

As mentioned above, the Court finds that the destruction of the COP footage could have been problematic for the Government in light of Judge Markovich's August 24, 2022 order. The Court finds that on this record Defendant has not established that a missing evidence instruction is warranted. Given that Agent Diaz did not witness the alleged assault, the Court struggles to the see the relevancy of his testimony. While the Government contends that Agent Diaz's testimony is necessary to establish that Agent B.H. was assaulted during the course of his duties, this is something that Agent B.H. can testify to.

For the foregoing reasons, the Court will deny Defendant's motion to preclude the testimony of Agent Diaz without prejudice for Defendant to raise specific objections to his testimony at trial.

### III.  CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED REJECTING IN PART** the R&R (Doc. 35) as set forth above, **DENYING** Defendant's Motion to Dismiss Indictment (Doc. 28), and **DENYING** Defendant's Motion to Preclude Testimonty (*sic*) of Border Patrol Agent Richard Diaz (Doc. 44).

Dated this 24th day of May, 2022.

Honorable John C. Hinderaker
United States District Judge